UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ANNMARIE COMBA,

                        Plaintiff,          **MEMORANDUM AND ORDER**

 - against -                        2:19-cv-1127 (DRH) (AKT)

UNITED STATES OF AMERICA,

                        Defendant.
--------------------------------------------------------------X

**APPEARANCES**

**SCHWARTZAPFEL LAWYERS, P.C.**
Attorneys for Plaintiff
600 Old Country Road, Suite 450
Garden City, NY 11530
By:   Tanya M. Demaio, Esq.

**MARK J. LESKO**
**ACTING UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF NEW YORK**
Attorneys for Defendant
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
By:   Mary M. Dickman, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Annmarie Comba ("Plaintiff") brought this action against Defendant United States of America ("Defendant") under the Federal Tort Claims Act, alleging injury from a rear-end collision caused by a United States Defense Counterintelligence and Security Agency employee's negligence.  Presently before the Court is Plaintiff's motion for summary judgment on the issue of liability and Defendant's cross-motion for summary judgment on the issues of damages and

causation, both pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, Plaintiff's motion is GRANTED and Defendant's cross-motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts, taken from the parties' Local Rule 56.1 statements, are undisputed unless otherwise noted.  (Pl. Statement of Material Facts ("Pl. 56.1") [DE 39-2]; Def. Responses to Plaintiff's Statement of Material Facts ("Def. Resp. 56.1") [DE 47-1]; Def. Statement of Undisputed Facts ("Def. 56.1") [DE 46-1]); Pl. Response Statement of Material Facts ("Pl. Resp. 56.1") [DE 50][1]).

On the afternoon of November 16, 2017, Plaintiff Annmarie Comba, driving eastbound on the Southern State Parkway in Long Island, New York, slowed her vehicle to a stop due to traffic ahead, near Exit 22.  (Pl. 56.1 ¶¶ 1, 5; Def. 56.1 ¶¶ 3, 5).  Heather West, a Defense Counterintelligence and Security Agency employee driving a vehicle owned by General Services Administration, an independent agency of Defendant, rear-ended Plaintiff's vehicle.  (Pl. 56.1 ¶¶ 5, 7; Def. 56.1 ¶¶ 2–3).  Plaintiff estimated West's speed at twenty-five miles-per-hour, (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 24); West estimated her speed at approximately five-to-six miles-per-hour, (Def. 56.1 ¶ 5).  Plaintiff and West pulled over to the side of the road and called the police, (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 9), who filed a Police Accident Report, (*see* Ex. C ("Police

---

[1]     Plaintiff's Response to Defendant's Statement of Material Facts functions both as a rebuttal to Defendant's version of the facts as well as an attorney affidavit introducing certain exhibits.  *See* Pl. Resp. 56.1.

Accid. Rpt.") [DE 39-6] to Aff. of Tanya M. DeMaio ("DeMaio Aff.") [DE 39-1]).[2]  The Police did not issue any tickets, nor was an ambulance called.  (Def. 56.1 ¶ 16).

But Plaintiff claims she began suffering back, neck, and shoulder pain as a result and as early as that evening.  (Def. 56.1 ¶ 27).  Specifically, she alleges the following injuries: (i) intrasubstance tear posterior stenoid labrum of the right shoulder; (ii) supraspinatus and subscapularis tendinopathy of the right shoulder; (iii) impingement syndrome of the right shoulder; (iv) disc herniations at C4–5, C5–6, and C6–7; (v) subligamentous posterior disc bulge at C3–4; (vi) subligamentous posterior disc bulge at Tl–2; (vii) straightening of the cervical lordosis; and (viii) disc herniations at L4–5 and L5–S1.  (Pl. Resp. 56.1 ¶ 4).  Plaintiff has no relevant medical history as to her right shoulder; that is, she had never felt any shoulder pain until the collision.  (Def. 56.1 ¶¶ 107–30; Pl. Resp. 56.1 ¶ 8; Nov. 9, 2020 Report of Dr. Frank S. Segreto ("Nov. 9, 2020 Segreto Rpt."), Ex. D [DE 50-4] to Pl. Resp. 56.1).

The day after the collision, Plaintiff began to seek treatment by visiting her primary care doctor, Dr. Marc Lewandoski, D.O., who gave her a Toradol injection, a Robaxin prescription, and a same-day referral for x-rays.  (Def. 56.1 ¶¶ 30–38).  Her treatment later involved physical therapy and chiropractic care from Dr. Anthony Ippolito, D.C., (*id.* ¶¶ 39, 41; Pl. Resp. 56.1 ¶ 6), neurological care from Dr. Iqbal Merchant, M.D., (Def. 56.1 ¶¶ 51–58), and acupuncture, (*id.* ¶ 40).  Dr. Ippolito

---

[2]    Because Defendant does not contest liability, (*see infra* Discussion Section I), the Court does not describe the weather or West's malfunctioning brakes, the details of which the parties disagree, (*compare,* Pl. 56.1 ¶¶ 5, 9–10, *with* Def. 56.1 ¶¶ 4, 6.)

ultimately referred Plaintiff to Dr. Frank Segreto, M.D., an orthopedic surgeon. (*Id.* ¶ 41; Pl. Resp. 56.1 ¶ 6).

Plaintiff first saw Dr. Segreto on December 6, 2017, *i.e.*, less than three weeks after the collision. (Def. 56.1¶ 42). At the first visit, Dr. Segreto noted Plaintiff's "painful range of motion in her right shoulder" and "assessed 'multiple trauma closely related [to a] motor vehicle accident [and] right shoulder derangement.'" (*Id.* ¶¶ 44–45; *see* Nov. 9, 2020 Segreto Rpt.). He then directed Plaintiff to obtain an MRI of her right shoulder and instructed her to continue physical therapy and chiropractic treatment. (Def. 56.1 ¶ 46; Nov. 9, 2020 Segreto Rpt.).

Plaintiff's MRI, taken February 2, 2018, revealed "an intrasubstance tear of the posterior glenoid; labrum supraspinatus and subscapularis tendinopathy; and acromioclavicular hypertrophic changes associated with impingement syndrome." (Def. 56.1 ¶ 67; Feb. 2, 2018 MRI Report, Ex. C [DE 50-3] to Pl. Resp. 56.1). At a follow-up visit two weeks later, Dr. Segreto noted, *inter alia*, Plaintiff's "pain with decreased range of motion," coupled with "increasing weakness[,] of the right shoulder." (Def. 56.1 ¶¶ 68–70; Nov. 9, 2020 Segreto Rpt.). In other office notes taken in subsequent visits, Dr. Segreto observed Plaintiff's "feel[ing that] she is improving" and "full" range of motion in her right shoulder – but also "pain," "discomfort," and "weakness" notwithstanding. (Def. 56.1 ¶¶ 75–76, 83, 85, 90–93). Dr. Segreto has recommended surgery: an arthroscopic labral repair of her right shoulder, (Def. 56.1 ¶ 70; Nov. 9, 2020 Segreto Rpt.), but Plaintiff has declined thus far, (*e.g.*, Def. 56.1 ¶¶ 73, 75; Nov. 9, 2020 Segreto Rpt.). In lieu of surgery, Dr. Segreto has administered

cortisone injections to Plaintiff's shoulder. (Def. 56.1 ¶¶ 81, 89). He has diagnosed her right shoulder injury as a "permanent partial disability . . . clearly causally related to" Plaintiff's collision. (Nov. 9, 2020 Segreto Rpt.).

Dr. Mark G. Creighton, M.D., an orthopedist, conducted Plaintiff's Independent Medical Examination on January 6, 2020. (Def. 56.1 ¶¶ 140–53; Ex. 15 [DE 46-8] to Decl. of Mary M. Dickman ("Dickman Decl.") [DE 46-2]). Dr. Creighton found "mild tenderness lateral to the acromion," with positive signs of impingement, leading him to conclude that Plaintiff's injury was "more consistent with a chronic preexisting injury" and not "related in any way" to the rear-end collision. (Def. 56.1 ¶¶ 141, 146; Ex. 15 to Dickman Decl.).

Plaintiff has incurred $22,127.94 in medical bills, of which her insurer has paid $12,958.74. (Def. 56.1 ¶¶ 102–03). She also claims $500 in property damages and $1,000,000.00 in "personal injur[y]" damages. (*Id.* ¶105).

Plaintiff instituted this action in December 2018. [DE 1]. Summary judgment motion practice began in September 2020. [DE 39].

## LEGAL STANDARD

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

The Federal Torts Claims Act ("FTCA") enables suits "(1) against the United States, (2) for money damages, . . . (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of [her] office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Brownback v. King*, — U.S. —, 141 S.Ct. 740, 746 (2021) (quoting *FDIC v. Meyer* ("*Meyer*"), 510 U.S. 471, 475–476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)); *see*

28 U.S.C. § 1346(b)(1).  As an initial matter, then, "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees," *Meyer*, 510 U.S. at 478, because state law is "the source of substantive liability under the FTCA," *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).

The at-issue collision and Plaintiff's injuries occurred in New York, meaning New York state law applies.  Pl. 56.1 ¶ 1; Def. 56.1 ¶¶ 3, 7; Police Accid. Rpt.; *e.g.*, *Avlonitis v. United States*, 2020 WL 1227164, at *5 (E.D.N.Y. Mar. 13, 2020) ("Because the motor vehicle collision underlying this action occurred in New York, New York tort law applies." (quoting *Hyacinthe v. United States*, 2009 WL 4016518, at *6 (E.D.N.Y. Nov. 19, 2009)).  "Under New York law, . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."  *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)); *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 441 N.Y.S.2d 644 (N.Y. 1981).  Plaintiff's burden is a preponderance of the evidence.  *E.g.*, *Polanco v. United States*, 2020 WL 6504554, at *12 (S.D.N.Y. Nov. 5, 2020); *Kane v. United States*, 189 F. Supp. 2d 40, 52 (S.D.N.Y. 2002) (Chin, J.) (citing 1B New York Pattern Jury Instructions 2:275.1 (2000)).

Plaintiff moves for summary judgment (i) "on the issue of liability."  Pl. Reply at 1 [DE 49].  Defendant cross-moves for summary judgment based on the issues of

(ii) damages and (iii) causation.  Def. Cross-Mem. [DE 46-5].  The Court addresses each in sequence.

## I.   Liability

New York courts have long recognized that "[a] rear-end collision with a stopped or stopping vehicle creates a prima facie case of liability with respect to the operator of the rearmost vehicle." *Filippazzo v. Santiago*, 277 A.D.2d 419, 419, 716 N.Y.S.2d 710 (N.Y. App. Div., 2d Dep't 2000); *e.g.*, *Hyacinthe*, 2009 WL 4016518, at *6; *Mascitti v. Greene*, 250 A.D.2d 821, 822, 673 N.Y.S.2d 206 (N.Y. App. Div., 2d Dep't 1998) ("[I]t is well established that a rear-end collision with a stopped vehicle establishes a prima facie case of negligence on the part of the operator of the following vehicle").  In these cases, a defendant bears the burden of "provid[ing] a non-negligent explanation of the collision in order to overcome the inference of negligence and defeat the motion for summary judgment." *Luizzi v. Pro Transp. Inc.*, 2009 WL 252076, at *4 (E.D.N.Y. Feb. 2, 2009); *Cajas-Romero v. Ward*, 106 A.D.3d 850, 851, 965 N.Y.S.2d 559 (N.Y. App. Div., 2d Dep't 2013).  Accepted non-negligent explanations include "mechanical failure, a sudden stop of the vehicle ahead, an unavoidable skidding on a wet pavement, or any other reasonable cause." *Filippazzo*, 277 A.D.2d at 419; *see Luizzi*, 2009 WL 252076, at *4.

The parties agree that Defendant rear-ended Plaintiff as Plaintiff was slowing down or stopped.  *E.g.*, Pl. 56.1 ¶ 5 ("As Plaintiff slowed her car down, Plaintiff was struck full force from behind." (internal quotation marks omitted)); Def. 56.1 ¶¶ 5, 7 (stating that "the front end of [Defendant's] vehicle came into contact with the rear

end of Plaintiff's vehicle" which "had stopped"); Police Accid. Rpt. (reciting the event as: Plaintiff "slows" and is "rear-ended" by Defendant). Therefore, Plaintiff has established a prima facie case for liability.

Though its Rule 56.1 Statement hints at non-negligent explanations for the collision, *e.g.*, Def. 56.1 ¶¶ 4, 6, Defendant does not contest liability. *See* Def. Opp. at 2–4. Instead, Defendant asserts "a showing of liability alone is not sufficient grounds for summary judgment" and references Plaintiff's inability to demonstrate damages or causation. *Id.* at 3–4. But Plaintiff moves for summary judgment only as to liability and not with respect to her entire claim – Defendant's contention is non-responsive. Plaintiff's motion for summary judgment as to the issue of liability is granted. *E.g.*, *Polonia v. Dunphy*, 2012 WL 2376467, at *6 (S.D.N.Y. June 21, 2012) ("The presumption of negligence still applies in this case and Dunphy does not successfully rebut it with a non-negligent reason for the accident. Even taking Dunphy's story as true, he is still liable and thus summary judgment should be granted for Plaintiff."); *Schmertzler v. Lease Plan U.S.A., Inc.*, 137 A.D.3d 1101, 1102, 27 N.Y.S.3d 648 (N.Y. App. Div., 2d Dep't 2016); *Barile v. Lazzarini*, 222 A.D.2d 635, 636, 635 N.Y.S.2d 694 (N.Y. App. Div., 2d Dep't 1995) ("If the operator cannot come forward with any evidence to rebut the inference of negligence, the plaintiff may properly be awarded judgment as a matter of law."); *Starace v. Inner Circle Qonexions, Inc.*, 198 A.D.2d 493, 494, 604 N.Y.S.2d 179 (N.Y. App. Div., 2d Dep't 1993) ("Since the appellants did not come forward with any evidence to rebut the

inference of negligence, we conclude that the trial court properly awarded the plaintiff judgment as a matter of law on the issue of liability.").

## II. Damages

Both Plaintiff and Defendant assert that New York's No-Fault statute applies to the issue of damages. *E.g.*, *Morrone v. McJunkin*, 1998 WL 872419, at *2 (S.D.N.Y. Dec. 15, 1998). The Court agrees: Plaintiff, as the occupant of an insured vehicle in New York, and Defendant, the United States, are "covered person[s]" under the statute. N.Y. Ins. Law § 5102(j); *Wirt v. United States*, 732 Fed. App'x 32, 35 (2d Cir. 2018) (citing *United States v. GEICO*, 605 F.2d 669, 671 (2d Cir. 1979)); *Canfield v. Beach*, 305 A.D.2d 440, 441, 761 N.Y.S.2d 71 (N.Y. App. Div., 2d Dep't 2003); *e.g.*, *Polanco*, 2020 WL 6504554, at *13 .

"New York's 'no-fault' insurance laws place limits on any recovery by a person involved in an automobile accident," providing recovery only for (a) economic losses beyond the "basic economic loss" threshold and (b) non-economic losses arising from "serious injury." N.Y. Ins. Law §§ 5102, 5104; *Polanco*, 2020 WL 6504554, at *12; *Avlonitis*, 2020 WL 1227164, at *5 (internal quotation marks omitted). Whether a plaintiff may recover either is "quintessentially an issue of damages, not liability." *See Van Nostrand v. Froehlich*, 44 A.D.3d 54, 62, 844 N.Y.S.2d 293 (N.Y. App. Div., 2d Dep't 2007).

### A. Economic Loss

Basic economic losses are medical costs, "lost wages," and "reasonable and necessary expenses" totaling to $50,000.00 or less. N.Y. Ins. Law § 5102(a). New

York No-Fault Insurance Law denies a "right of recovery . . . for basic economic loss," *id.* § 5104, which means a plaintiff must "show[] that she has suffered more than . . . $50,000[] in the form of medical costs and other expenses" to "recover any economic damages." *Perez v. United States*, 2019 WL 2336526, at *10 (S.D.N.Y. June 2, 2019). If Plaintiff fails to do so, then Defendant is entitled to summary judgment barring any such recovery. *E.g.*, *Mercado v. Lee*, 2008 WL 4963985, at *6 (S.D.N.Y. Nov. 21, 2008); *Diaz v. Lopresti*, 57 A.D.3d 832, 833, 870 N.Y.S.2d 408 (N.Y. App. Div., 2d Dep't 2008).

Defendant contends that Plaintiff suffered only non-compensable "basic economic loss." Def. Cross-Mem. at 18. In support, Defendant notes the absence of any affirmative claim for lost wages, *id.* (citing the Complaint), and annexes insurance documentation reflecting roughly $22,000.00 in medical expenses, *id.* (citing Ex. 13 [DE 48-7] to Dickman Decl.).

Plaintiff's opposition brief is silent on economic loss. *See* Pl. Opp. at 11–15. Defendant is therefore entitled to summary judgment on this issue: Plaintiff may not recover her economic losses. *E.g.*, *Williams v. Elzy*, 2003 WL 22208349, at *3 (S.D.N.Y. Sept. 23, 2003) ("Plaintiff has not submitted any evidence to indicate that she is seeking damages for economic loss greater than 'basic' economic loss . . . . Thus, the damages sought by plaintiff are exclusively for 'non-economic' loss."); *Watford v. Boolukos*, 5 A.D.3d 475, 476, 772 N.Y.S.2d 566 (N.Y. App. Div., 2d Dep't 2004) (granting defendant summary judgment on economic loss because "plaintiff failed to

plead a claim for economic loss in the complaint . . . [and] failed to produce any evidence in admissible form which supports such a claim.").

## B. Serious Injury

New York No-Fault law permits recovery for non-economic losses—*e.g.*, "pain and suffering"—if a plaintiff suffers "serious injury." N.Y. Ins. Law §§ 5102(c), 5104. "Serious injury" is defined, in relevant part, as:

> a personal injury which results in . . . [i] permanent loss of use of a body organ, member, function or system; [ii] permanent consequential limitation of use of a body organ or member; [iii] significant limitation of use of a body function or system; [iv] or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

As the summary judgment movant, Defendant "must establish a prima facie case that [P]laintiff did not sustain a 'serious injury.'" *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010). Should Defendant do so, Plaintiff must then "establish a prima facie case that [she] sustained a serious injury. *Id.* Plaintiff meets her burden by offering "objective proof . . . ; subjective complaints alone are not sufficient." *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (N.Y. 2002). "If it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of [N.Y. Ins. Law § 5102(d)], then

plaintiff has no claim to assert and there is nothing for the jury to decide." *Licari v. Elliott*, 57 N.Y.2d 230, 238, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (N.Y. 1982).[3]

While Plaintiff asserts the collision caused back and neck injuries, she does not argue either constitutes "serious injury." *See* Pl. Opp. 11–15. Even so, when a "plaintiff establishe[s] that at least some of [her] injuries meet the 'No Fault' threshold, it is unnecessary to address whether [her] proof with respect to other injuries [she] allegedly sustained would have been sufficient to withstand defendants' motion for summary judgment." *Linton v. Nawaz*, 14 N.Y.3d 821, 822, 926 N.E.2d 593, 900 N.Y.S.2d 239 (Mem) (N.Y. 2010); *Garcia v. Basdeo*, 2005 WL 2002450, at *6 n.11 (E.D.N.Y. Aug. 19, 2005) (Mann, Mag. J.) ("The defense contends that plaintiff has not satisfied the 'serious injury' threshold 'in regard to the injuries claimed for his neck and back.' However, where the plaintiff has established a serious injury— here, a torn rotator cuff—he may also recover for additional injuries that would not independently satisfy the serious injury threshold." (internal citations omitted)). Accordingly, and because Plaintiff focuses her "serious injury" argument on her right shoulder, the analysis below omits reference to her neck and back conditions.

### i. Permanent Loss of Use

Plaintiff's injuries do not fit within the "[p]ermanent loss of use of a body organ, member, function or system" category of "serious injury" because she does not have

---

[3]    "The Second Circuit has indicated that district courts should apply New York's burden-shifting framework, despite its apparent tension with the *Celotex* summary judgment standard." *Kang v. Romeo*, 2020 WL 4738947, at *8 n.17 (E.D.N.Y. Aug. 14, 2020).

"a total loss." *Oberly v. Bangs Ambulance Inc.*, 96 N.Y.2d 295, 299, 751 N.E.2d 457, 727 N.Y.S.2d 378 (N.Y. 2001); *Davis v. Cottrell*, 101 A.D.3d 1300, 1301, 956 N.Y.S.2d 248 (N.Y. App. Div., 3d Dep't 2012) ("[T]he record [must] include proof that plaintiff has lost the total use of any body organ or system."). New York law considers "partial" injuries, even if permanent, insufficient under this category. *See Oberly*, 96 N.Y.2d at 299 ("Had the Legislature considered partial losses already covered under 'permanent loss of use,' there would have been no need to enact the [second and third categories of serious injuries]."); *e.g.*, *Davis*, 101 A.D.3d at 1301 ("Because the record does not include proof that plaintiff has lost the total use of any body organ or system, and even her treating physician . . . diagnosed her with a 'permanent partial disability,' plaintiff cannot proceed under the permanent loss of use category."). Plaintiff's doctor diagnosed her with a "permanent *partial* disability of her right shoulder," which is not enough. Nov. 9, 2020 Segreto Rpt. (emphasis added).

### ii.    Permanent Consequential Limitation & Significant Limitation

The second and third "serious injury" categories, "permanent consequential limitation" and "significant limitation," overlap and are often considered together. *Avlonitis*, 2020 WL 1227164, at *6 ("With the exception that the plaintiff prove permanence to satisfy the 'consequential limitation' definition, 'significant limitation' is essentially identical." (quoting *Williams v. United States*, 2014 WL 11460892, at *8 (N.D.N.Y. Jan. 28, 2014)); *see Lopez v. Senatore*, 65 N.Y.2d 1017, 1019–20, 484 N.E.2d 130, 494 N.Y.S.2d 101 (N.Y. 1985). But, nevertheless, a "permanent consequential limitation of use of a body organ or member" requires, *inter alia*, "competent medical

evidence that [a plaintiff's] injuries are permanent." *Ventra v. United States*, 121 F. Supp. 2d 326, 333 (S.D.N.Y. 2000). And "significant limitation of use of a body function or system" asks for "more than . . . a minor, mild or slight limitation of use." *Licari*, 57 N.Y.2d at 236. "Whether a limitation of use or function is 'significant' or 'consequential' (*i.e.,* important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Dufel v. Green,* 84 N.Y.2d 795, 798, 647 N.E.2d 105, 622 N.Y.S.2d 900 (N.Y. 1995) (internal citations omitted).

Defendant carries its burden of showing Plaintiff's failure to sustain a "serious injury" by citing the sworn Independent Medical Examination report of its expert Dr. Mark G. Creighton, M.D., "unsworn reports by [P]laintiff's physicians," and Plaintiff's deposition testimony. Def. Cross-Mem. at 22–24. Dr. Creighton opined that Plaintiff's symptoms were consistent with "underlying," "preexisting," and "degenerative" conditions unrelated "in any way to her" rear-end collision. Ex. 15 to Dickman Decl. This showing constitutes "a prima facie case that [Plaintiff] suffered no permanent and consequential or significant limitation of the use of her body." *Bass v. Hout*, 2019 WL 6527944, at *5 (S.D.N.Y. Dec. 4, 2019); *see Ciappetta v. Snyder*, 2021 WL 536131, at *9 (E.D.N.Y. Jan. 22, 2021), *report and recommendation adopted*, 2021 WL 512462 (E.D.N.Y. Feb. 11, 2021) (finding defendants' expert report "sufficient to satisfy [d]efendants' prima facia case the [p]laintiff has not suffered a significant limitation which would qualify as serious injury under the New York" law, thus shifting the burden "to Plaintiff to establish, through objective evidence, that

[she] has suffered a significant limitation); *see also Yong Qin Luo*, 625 F.3d at 777 (finding defendants' expert reports sufficient).

Plaintiff, in turn, successfully bears her burden and creates a genuine dispute of material fact as to whether she suffered "serious injury" by virtue of a "significant limitation." Her treating physician, Dr. Segreto, opined that Plaintiff suffered a "permanent partial disability" to her right shoulder, resulting in decreased "range of motion, strength, and stability," which "is clearly causally related to the motor vehicle accident of November 16, 2017." Nov. 9, 2020 Segreto Rpt.; *Yong Qin Luo*, 625 F.3d at 777. Dr. Segreto's observations derive from Plaintiff's "regular" office visits, where "at every visit" they discussed her right shoulder and explored "the possibility of surgery"; he also administered "cortisone and lidocaine injections." *Id.* His opinion is based on "objective proof of injury," including right shoulder MRI results showing "a tear in the posterior glenoid labrum supraspinatus" – *i.e.*, "a labrum tear and partial rotator cuff tears." Nov. 9, 2020 Segreto Rpt. Whereas Defendant's expert Dr. Creighton wrote that Plaintiff's shoulder MRI "showed rotator cuff tendonopathy but no tear," Ex. 15 to Dickman Decl., Dr. Segreto wrote that "the MRI revealed a [glenoid labrum] tear," Nov. 9, 2020 Segreto Rpt., a finding corroborated by the MRI Report's "Impression" section, Ex. C to Pl. Resp. 56.1 ("intrasubstance tear posterior glenoid labrum").

As a whole, Dr. Segreto's opinion reflects a "qualitative assessment of [P]laintiff's condition" built upon "an objective basis" that compares her "limitations to the normal function, purpose, and use of the" shoulder. *Yong Qin Luo*, 625 F.3d at

777 (internal quotation marks omitted) (quoting *Toure*, 98 N.Y.2d at 350). Viewing the evidence in the light most favorable to the non-movant, as the Court must do on summary judgment, Plaintiff has successfully rebutted Defendant's prima facie case.

Indeed, the New York Court of Appeals in *Toure* held that an analogous medical opinion, "supported by objective medical evidence" in the form of MRI reports, was "sufficient to defeat defendants' motion for summary judgment." 98 N.Y.2d at 353. In the same vein as *Toure*, several courts have held a doctor's qualitative assessment, supported by MRI results, as to the "significant limitation" imposed by a plaintiff's partial rotator cuff tear caused by a car accident, successfully raises a genuine question of material fact on the issue of "serious injury." *E.g.*, *Yong Qin Luo*, 625 F.3d at 778 (holding "a tear in the right shoulder" with "subjective evidence as to the impact of the injury on her functioning" sufficed); *Bass*, 2019 WL 6527944, at *2, *5 ("Cohen documented muscle spasms and loss of feeling in Bass' arm, and the MRI, though disputed, suggests the possibility of a tear, findings that support a ruling in favor of a serious injury."); *Gil v. W. Express, Inc.*, 2017 WL 4129634, at *11 (S.D.N.Y. Sept. 14, 2017) (McCarthy, Mag. J.) (citing MRI results showing "extensive partial rotator cuff tear"); *Acosta v. Ramos*, 144 A.D.3d 441, 442, 40 N.Y.S.3d 116 (N.Y. App. Div., 1st Dep't 2016) ("[P]laintiff's orthopedic surgeon . . . opined, based on his examination of plaintiff, his observations during surgery, his review of the MRI, and plaintiff's lack of history of previous shoulder injuries, that the shoulder tears were causally related to the accident."); *Hong v. Chen*, 55 Misc. 3d 1203(A), 55 N.Y.S.3d 692 (N.Y. Sup. Ct., Queens Cnty. 2017).

Defendant asserts Dr. Segreto's "unsworn" December 12, 2019 report is inadmissible and thus should not be considered on summary judgment. Def. Cross-Mem. at 22. Yet Dr. Segreto's November 9, 2020 report offers the same opinion and *is* sworn—his medical opinion, therefore, is properly considered by the Court. Nov. 9, 2020 Segreto Rpt. ("I, Frank S. Segreto, M.D., hereby affirm the above to be true under the penalty of perjury.").[4]

Therefore, although Defendant meets its prima facie burden to show Plaintiff did not suffer "serious injury," Plaintiff's proof in rebuttal raises a genuine question of material fact. *See Kim v. Stewart*, 2021 WL 1105564, at *7 (S.D.N.Y. Mar. 23, 2021) (Cave, Mag. J.) ("'[C]ontradicting medical affirmations . . . [submitted] in connection with this motion merely establishes a battle of the experts' [which] underscores the conclusion that [plaintiff] has presented sufficient evidence to raise a genuine issue of material fact." (internal quotation marks and alterations omitted) (quoting *Klein v. Goldfarb*, 2004 WL 551219, at *1 (S.D.N.Y. Mar. 22, 2004))). This issue is best left for a jury.

### iii.    90/180 Category

Section 5102(d)'s final category—the "90/180 category," *Toure*, 98 N.Y.2d at 357—calls for injury or impairment to "prevent[] the injured person from performing

---

[4]    Dr. Segreto's November 9, 2020 report is dated subsequent to Defendant's cross-motion opening brief, which explains why Defendant does not reference it. *Compare* Def. Cross-Mem. [DE 46] (filed Oct. 16, 2020), *with* Ex. D to Pl. Resp. 56.1 [DE 50-4] (dated Nov. 9, 2020). That said, Defendant never submitted a Reply brief despite being granted an extension to do so. *See* Mot. for Extension of Time [DE 51] (dated Nov. 20, 2020); Order dated November 23, 2020.

substantially all of" the person's usual and customary daily activities" for at least 90 days during the first 180 days immediately after the accident.   N.Y. Ins. Law § 5102(d).   "[T]he words 'substantially all' should be construed to mean that the person has been curtailed from performing [her] usual activities to a great extent rather than some slight curtailment."   *Licari*, 57 N.Y.2d at 236.

Plaintiff's injuries do not fit within this category.   Plaintiff missed no work due to her injuries, Tr. of Dep. of Annmarie Comba at 91:2–5, Ex. D. [DE 39-7]  to  DeMaio Aff. ("Q: Did you miss any time at your job based on injuries that you claim as a result of this accident? A: No."), and "courts have generally found a defendant's initial burden [in the 90/180 category] met where the plaintiff worked for more than ninety of the one hundred and eighty days following an accident or returned to work soon after the accident," *Perpall v. Pavetek Corp.*, 2017 WL 1155764, at *26 (E.D.N.Y. Mar. 27, 2017) (citing cases).   Plaintiff points to no evidence suggesting she was *prevented* from performing any daily activities; her argument to this end is an oblique reference to "*altered* daily activities."   Pl. Opp. at 13–14 (emphasis added).   And it is not clear to which "activities" Plaintiff alludes: "daily living, work and sleep" are far too nebulous to pass muster on summary judgment.   *See id.*

\*   \*   \*

As to damages, Defendant shall be granted summary judgment on the issue of "economic loss."   But for "non-economic loss," Plaintiff has raised a genuine question of material fact as to whether her right shoulder condition reflects "serious injury" due to a "permanent consequential limitation" or "significant limitation."

## III.   Causation

As a final hurdle, Plaintiff's "serious injur[ies]" must be "proximately caused by the accident at issue." *Carter v. Full Service, Inc.*, 29 A.D.3d 342, 344, 815 N.Y.S.2d 41 (N.Y. App. Div., 1st Dep't 2006). A defendant can win summary judgment on this issue by showing "additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition." *Pommells v. Perez*, 4 N.Y.3d 566, 572, 830 N.E.2d 278, 797 N.Y.S.2d 380 (N.Y. 2005). "When a defendant submits persuasive evidence that a plaintiff's alleged pain and injuries are related to a pre-existing condition, the plaintiff has the burden to come forward with evidence addressing the defendant's claimed lack of causation; if the plaintiff fails to meet that burden, the defendant is entitled" to summary judgment. *Arenes v. Mercedes Benz Credit Corp.*, 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006) (citing *Pommells*, 4 N.Y.3d at 580); *see Evans v. United States*, 978 F. Supp. 2d 148, 164 (E.D.N.Y. 2013).

At the outset, the Court notes that both Plaintiff and Defendant's doctors rely on the same evidence to reach opposite conclusions on the cause of Plaintiff's condition. Each relies specifically on the MRI results and his in-person assessment of Plaintiff's right shoulder. *Compare* Ex. 15 to Dickman Decl., *with* Nov. 9, 2020 Segreto Rpt. The MRI report itself says nothing about the cause—*e.g.*, motor vehicle accident or degeneration—of Plaintiff's shoulder injury. *See* Ex. C. to Pl. Resp. 56.1.

In his sworn report, Defendant's expert Dr. Creighton opined that Plaintiff's condition "is more consistent with a chronic pre-existing condition" and that the collision was not "related in any way to her right shoulder symptoms." Ex. 15 to Dickman Decl.  New York courts have recognized a defense expert's conclusions to that end carry the defense's burden on causation.  *E.g.*, *Kang v. Romeo*, 2020 WL 4738947, at *25 (E.D.N.Y. Aug. 14, 2020); *Rhone v. United States*, 2007 WL 3340836, at *7–8 (S.D.N.Y. Nov. 9, 2007); *Arenes*, 2006 WL 1517756, at *8; *Moon v. Some*, 189 A.D.3d 628, 629, 139 N.Y.S.3d 24 (N.Y. App. Div., 1st Dep't 2020); *Montgomery v. Pena*, 19 A.D.3d 288, 289, 798 N.Y.S.2d 17 (N.Y. App. Div., 1st Dep't 2005); *Shinn v. Catanzaro*, 1 A.D.3d 195, 197, 767 N.Y.S.2d 88 (N.Y. App. Div., 1st Dep't 2003).

Dr. Segreto states, by contrast—and based on the same objective evidence considered by Dr. Creighton as well as a longer treatment history with Plaintiff— that her "right shoulder injury is clearly causally related to the motor vehicle accident." Nov. 9, 2020 Segreto Rpt.  While he does not specifically address the subject of "degenerative" or pre-existing" condition, Dr. Segreto described Plaintiff as "a right handed individual with no prior problems with the right shoulder," whose symptoms first manifested following the collision at issue – evidence countering Defendant's theory of causation.  *Id.*  Additionally, "contemporaneous findings of injury are highly relevant to causation," *Crawford-Reese v. Woodard*, 95 A.D.3d 1418, 1420, 944 N.Y.S.2d 333 (3d Dep't 2012) (citing *Perl v. Meher*, 18 N.Y.3d 208, 218, 960 N.E.2d 424, 936 N.Y.S.2d 655 (N.Y. 2011)), and Dr. Segreto averred in his sworn

report that he made his first diagnosis less than three weeks after Plaintiff's collision and continued to see her at two-week intervals. Nov. 9, 2020 Segreto Rpt.

The summary judgment question before the Court parallels the one addressed by New York Appellate Division, First Department in *Linton v. Nawaz*, 62 A.D.3d 434, 879 N.Y.S.2d 82 (N.Y. App. Div., 1st Dep't 2009), *aff'd*, 14 N.Y.3d 821, 926 N.E.2d 593, 900 N.Y.S.2d 239 (Mem) (N.Y. 2010). The *Linton* Court denied defendants summary judgment, finding:

> Defendants' sole competent evidence in favor of summary judgment was a doctor's opinion that plaintiff's injuries pre-existed the accident. Plaintiff submitted the affirmation of a treating physician, based on a physical examination performed within days of the accident, opining that the injuries were caused by the accident. There is no basis on this record to afford more weight to defendants' expert's opinion and there are no "magic words" which plaintiff's expert was required to utter to create an issue of fact. If anything, plaintiff's expert's opinion is entitled to more weight. Moreover, that opinion constituted an unmistakable rejection of defendants' expert's theory.

*Id.* at 443. Accordingly, this Court will not grant Defendant summary judgment by calling the non-movant Plaintiff's expert's opinion on causation "conclusory," where Defendant's own expert offered an equally "conclusory" opinion upon consideration of the same objective evidence.[5] *Cf. Baytsayeva v. Shapiro*, 868 F. Supp. 2d 6, 26 (E.D.N.Y. 2012) ("[T]he New York Court of Appeals has already held that a

---

[5]     The Court questions the persuasiveness of Dr. Creighton's general assertion that "[a] rear end collision of less than 10 m.p.h. by a significantly smaller and lighter vehicle is highly unlikely to cause the rotator cuff tendonopathy, especially in a restrained driver." Ex. 15 to Dickman Decl. This generalization seems to be within a biomechanical engineer's wheelhouse, not a medical doctor's. *Morgan v. Girgis*, 2008 WL 2115250, at *5 (S.D.N.Y. May 16, 2008) (citing cases recognizing "a biomechanical engineer is qualified to offer testimony regarding the forces generated by certain accidents and the likely effects of such forces on the human body"). Even if considered, however, it does not alter the Court's conclusion.

defendant's allegations of a pre-existing condition based solely upon the defendant's radiologist's 'conclusory notation' of a degenerative condition following review of an MRI and nothing more is 'itself insufficient to establish that plaintiff's pain might be chronic and unrelated to the accident.'" (quoting *Pommells*, 4 N.Y.3d at 577–79)); *Burzynski v. United States*, 2016 WL 6298513, at *7 (W.D.N.Y. Oct. 27, 2016) (denying summary judgment where "[d]efendant's expert opines that any injury to Plaintiff's back is a result of degenerative changes unrelated to the collision; Plaintiff's treating physician opines the opposite").

## CONCLUSION

For the reasons discussed above, Plaintiff's motion is GRANTED as to liability. Defendant's motion is GRANTED to the extent that Plaintiff may not recover "economic loss" but DENIED as to the issues of "non-economic loss" and causation.

**SO ORDERED.**

Dated: Central Islip, New York
     April 23, 2021

    s/ Denis R. Hurley
    Denis R. Hurley
    United States District Judge